This morning, as we do from time to time, to celebrate an admission, at least a motion for admission to our bar, Mr. Courtney, will you approach the dais? And Judge Clevenger, if you're willing, you may proceed. May it please the court, I move the admission of Robert Courtney, who is a member of the bar and standing of the highest court of the state of California. I have knowledge of his credentials, and I'm satisfied that he possesses the necessary qualifications. The reason why I can make that statement is that Mr. Courtney has, for the last year, been my law clerk, has served the institution in my chambers with great dignity and great skill, and I hope that the court will find themselves in a position to act favorably upon my motion. We shall take it under advisement. Do I hear an objection to the admission of Mr. Courtney to this bar? Hearing none, it is my pleasure to grant Judge Clevenger's motion. Will you approach the clerk, please? Mr. Courtney, welcome to the bar. We look forward to seeing you many times on that side of the bar. Thank you. The court will now resume its hearings scheduled for this morning. The next argued case is case number 2011-1309, Textron Innovations against the American Eurocopter. Mr. Robertson. Good morning, Your Honors. May it please the court, my name is Scott Robertson, and I'm representing Textron here today. There are two central issues that are presented by this appeal. First is the district court's erroneous construction of the term replacement in a Jepson preamble in independent claim 10, in which he improperly imported a use requirement into an apparatus claim. The second issue I'd like to address this morning is the court's improper resolution of a disputed issue of material fact on summary judgment regarding the strap limitation involving a strap which attaches a cross piece or a cross tube to the fuselage of the accused helicopter, the EC-120. It is a strap with an outer surface, including a stop surface for mating with the bracket to minimize lateral movement of the bracket on the strap. Included in that error in resolving the disputed issue of fact were two claim construction errors concerning the term mating and on. I'd like to address the issue of the replacement. What about the interpretation of the word strap itself? The way I read the district court opinion, he seemed to me to be saying that a strap had to be a single piece of structure. I think that's correct, Judge Klobuchar. So he's saying a strap can't be two things, two separate pieces of structure that together act as a strap. I think that's- Was that a claim construction issue or is that a- No, I think that's an issue of fact that he resolved with respect to- Well, don't you have to say that if he interpreted the claim to require it to be a single piece of structure, that was an error in interpretation? I think it can be both. I think he did interpret it to have to be- Why are you resisting? I mean- Well, I think his holding suggested it had to be a unitary structure. There's nothing in the specification that requires it to be a unitary structure. In fact, there are examples in the specification of prior art straps that are multiple structures. But to get to the fact issue, don't you have to establish that as a matter of claim construction, the strap could be made up of more than one part? I think this court has held in several cases that a single element can be satisfied by multiple structural components. I think that what the judge made the leap- I mean, we did not have a Markman hearing in this case, so the claim construction was done in the context of summary judgment. I mean, the argument was made that the strap needed to be a unitary structure. And the judge so found because he found that there were at least three structures involved with respect to that. The judge was actually- When we made the argument that the strap involved the two stock pieces, which were admittedly actually called stock pieces by Eurocopter, and it's figure one that's at page nine of the opening brief, he ignored our argument, didn't even address it, that the central rubber gasket or rubber bearing that is between the two stock pieces can constitute and actually satisfy the element of limitation. He really did not deal with that. So he did not expressly address the issue of what would compose the strap in the context of the structure of the- I don't want to use up your time. As I look at your brief, I was understanding you to say that you thought if the judge thought that as a matter of claim construction, the strap had to be a single piece, he was wrong. I think that's correct. And then you had two arrows in your quiver. One was that you had a declaration that you thought would support literal infringement. That is to say, you know, the on and the mating limitations would be met. But that if one disagreed, if you lost on that point, you thought you were entitled to a DOE analysis. That's correct. On the same infringement issue. Yes, and it was an unrebutted declaration of an expert with 30 years of experience in aerodynamics and structural mechanics. What was his name? Dr. Schrag. And so we do believe, at a minimum, that raised an issue of disputed fact. In fact, since it was unrebutted, the judge himself, you know, acted as a person of ordinary skill in the art in determining that the limitation was not met. So we actually think- Is there a residual factual question as to whether or not the tensile strength or whatever the limitations in the claim are with regard to the tubing, whether that limitation is met? That was not addressed in the context of the summary judgment. We did put forward evidence. In the appeal papers here, there seems to be some disagreement between the two of you on that issue. I think there's disagreement, Your Honor, in the fact that what was raised in reply in the summary judgment briefing for the first time was a limitation involving whether or not the strap is in perforate, and therefore whether or not three pieces combined would be in perforate. What we understand in the ordinary meaning of in perforate in the context of the specification is thought about through holes essentially as how you connect the strap to the cross piece. Having pieces or having three separate structures doesn't mean that it's in perforate. But as I say, I don't think that- Even if you were to prevail on the issue you had in front of us, there may still be some detrius left on the table for infringement, whether or not there's infringement later on. I would not disagree with that, Your Honor. I think there are issues, but we think based on the judgment- What we have in front of us are the replacement issue, and then we've got the strap issue. That's correct. That's all that's before this court. We think based on the evidence that's been elicited, the unrebutted testimony of our expert, the fact the support of this court and the case law that repeatedly has said that more than one structure can satisfy a limitation, and just the way that the- I have a demonstrative here, and I don't want to belabor the issue, but you can clearly see these are stock pieces. They have a flange in red. They engage with the rubber gasket, which sits right on- This is the lower portion of the bracket that connects to the bottom of the fuselage. And so if the court agrees that these three components can comprise the strap, then they are mating with the bracket? Well, on the mating issue, they're not touching the bracket directly, right? They're touching the rubber first. Well- Correct? I know. I disagree, Your Honor. I think what's happening is this is actually touching the bracket, and these two stock pieces engage these flanges, and all three together perform the function that's described in the limitation for the strap. So if you, in fact, agree that these three components comprise the strap, as our expert has suggested, then it is directly mating, and it is directly sitting on the bracket. But even if it isn't, we have put forward detailed evidence in the declaration. I believe it's paragraph 21 of the expert report, the appendix, setting forth the DOE analysis. So we think he improperly construed the mating and on. There's case law directly on point here in which this court's construed the term mating to mean that it does not have to have direct physical contact. Excuse me. Well, what exactly does happen with respect to the bracket vis-a-vis the stock pieces? The bracket isn't shown in that diagram, I take it. It comes down from above, correct? Well, there's a lower bracket. Yes, but the upper bracket, which is the one that's... There's an upper bracket that actually is connected. Right, and that bracket fits into the rubber gasket, I take it. Exactly right. And the stock pieces block the lateral movement of the rubber gasket, and therefore, your argument is, also block the movement of the tube vis-a-vis the bracket, correct? That's exactly right, because they are, in fact, bolted to the cross piece through these through holes on either side. The bracket slips inside the rubber gasket. Right. The upper portion of the bracket slips inside this. What's between the stock pieces and the bracket is the ridge on the rubber gasket. Yeah. All right. Exactly right, Your Honor. Let me ask you a question while I've interrupted you that has puzzled me about this case. I'm not sure that it may not be critical to the outcome, but it's bedeviled me. If you look at Figure 5, you have the stock piece, which is 30 with an edge, 34, which abuts the bracket, which is in phantom, 60, correct? Have I got all the parts identified correctly? If Your Honor... Let me run it by you again. Thank you. 30 is the stock piece. We'll call it the vertical stock piece. 32 is the horizontal stock piece. Okay. 34 is the edge of the stock piece. 60 in phantom is the bracket, so that what you're showing here is the bracket abutting the stock piece, correct? Yes. But I don't see... I can see how this would keep the tube from moving in one direction. How does it keep the tube from moving in the other direction? I believe... Or is that not a concern? I believe... Or is there some feature not shown here that would have that effect? I think if you look at Figure 6, Your Honor, which is a cross-section, what's preventing it from moving is 30 or 34, which is angled against it on either side. You see 34? And that prevents the lateral movement. Well, you say... But in Figure 5, I only see it on one side of the bracket. In other words, to put it another way, I can see how 30, the bracket, the stock piece 30, would keep the tube from moving to the right, but I don't see how it keeps the tube from moving to the left. Well, again, if you look at Figure 6, Your Honor, there's two 34s on either side. In other words, you're saying there's a 34, which we're not seeing because it's on the other side of the tube, which is blocking movement in the other direction? That's correct. All right. And therefore, that is what you're calling mating. It's the fitting of the bracket in between the 30 on one side and the 30 on the other side. Is that correct? It prevents the lateral movement, yes, by having it on both sides. Okay. Just as a Q's device has brackets on both sides. I understand. Thank you. It's just that the diagram is quite... Well, the stop mechanism in the patented device, doesn't it snap up into the bracket on top? Not the accused device, but the patented article. Yeah, I think... Like Figure 6. On Figure 6, where you're talking about 34 and 34. Yeah, that's exactly right. Doesn't it snap up into the bracket? Yes, sir. And that's where the mating and the engagement is? Yes, sir. And that's controlling the force. Instead of in the accused device, where you have something that's laterally, you've got pressures coming from one side to the other. But it's still mating with the bracket. I understand that, but I mean the force control seems to be different in the patented article than in the accused device. Well... You're snapping something up into a bracket, and it's being held firm because it's snapped in on both sides up above. Well, of course, I mean, this is a one preferred embodiment. The term is mating with the bracket. Are Figure 6 and Figure 5 different embodiments? Because what Judge Clevenger is describing, which is what I had initially understood to be the way this works, and what looks like the device depicted in Figure 2, does not appear to be the Figure 5 device, which is an abutment inhibition. An inhibition by running up against the side of something, not by snapping onto something. Well, the patent says that Figures 5, 6, 7, and 8 show various views of the strap of the preferred embodiment. Do you understand what my problem is? The problem is, I think, brought to light by Judge Clevenger's observation about the snapping on. If you had a ridge, and you had a device which came down on top of that ridge and kept the thing from moving either way, that's what I think of as snapping on or mating. What 5 seems to be is a piece here that keeps the bracket from moving. That's a very different kind of structure. Is that what is present here, or is Judge Clevenger's device what's present here? Well, so I want to just make sure I understand the question. Are you talking in the preferred embodiment and the patent? I'm talking about what the patent is claiming, and if it's the preferred embodiment, you say that these figures are all the same thing. Is that Figure 5 and Figure 6? The bracket is attached to the top bracket, which is not shown in this figure. It's attached to the fuselage, and so is the patented and preferred embodiment. And so what happens is the stops on either side of that top bracket prevent lateral movement of the boss. If you look at Figure 2, you can see how it's going to work. Figure 2 shows the top bracket that's mounted to the fuselage. You're exactly right, Judge Clevenger, and that's 22A and 22A. Figure 2 shows the top bracket has a cavity inside of it, and into that cavity is going to ride the ridge that's shown on 20, which is the strap. The little elevated piece, you can almost see it there on Figure 2, is going to pop up into SnapLock. Element 20 in Figure 2A is the strap, and there you've got 22A, so they're engaged and they're mating. Was your answer to Judge Bryson that your patent covers both ways of mating? That is to say, snapping in as well as blocking from the side, because you've got if Figure 5 is complete. Yes, Your Honor. I don't think it's limited in the sense that there are different embodiments that are shown in the patent. In fact, we believe that the way the functioning of the accused device occurs in the sense that the stop pieces prevent the lateral movement that the claim element requires. Figure 5 reads right on the prior art, right? The 359 patent. Supposedly, the embodiment of what the accused is using, he's got this thing on the side that monitors the motion from side to side. Sorry, Your Honor. I think you said the 359 patent. I was mistaken. We're talking about the 242 patent. No, the 359 is your opposing prior art. Prior art. Well, of course, the judgment below had nothing to do with validity of the patents, and so that's really not before the court today. But there are many questions that are open with respect to that patent, including the nature of the alloy and the fatigue versus yield strength, which was not even explored. It's important for this court to note that the summary judgment was filed before discovery was even complete, particularly in validity discovery. No expert reports on invalidity. So that issue is not before the court today. That's a question for another day. If the court has any questions with respect to the replacement issue, I'm happy to briefly address that since I can see I'm almost out of time. Let's hear from the other side, and we'll save your rebuttal time. But let's see what your opponent has to say on this point. Thank you, Your Honor. Mr. Hardin. May it please the court, Roy Hardin for American Eurocopter. The summary judgment of non-infringement in this case must be sustained for two independent reasons. First, the inventors purposely and knowingly limited the invention to landing gear assemblies used as replacements, not assemblies used as original equipment. And there was no evidence in this case of any landing assembly that was not original equipment. But some of the accused structures are replacements, isn't that right? So wouldn't this go more to the extent of damages rather than whether there is or isn't infringement? Your Honor, the accused structures are all original equipment. They're not made to replace original equipment. And the inventors made that precise point in order to get this patent allowed. They did three things, Your Honor, three things that I call the trifecta of limitation to get this claim allowed. First, they amended the claim. They asked for a claim that said we want any landing gear having this structure. Examiner says no, rejected. They're using old materials, no. Yeah, but the rejection over Fagan didn't go to whether it was an original part or a replacement part. It did not, Your Honor. But what it went to was he said, look, I'm saying that the materials you're using are known in the art. And it was never contested by the applicant that that was not so. They weren't. Can you figure out what the basis of the 112 rejection was? The 112 rejection? Why did the examiner reject all the claims over 112 as being indefinite? Anybody know? I don't know, Your Honor. I didn't focus on that. I focused on the prior art rejection because the examiner also rejected under 102 and 103 these claims on the basis that these materials were known. Right, but the amendments that were made to overcome to traverse Fagan didn't have anything to do with whether or not it was a replacement or not. They did not. They had to do with the holes. That's right. But, but. They made structural changes to get by Fagan. That's correct, Your Honor. But the examiner said, look, you're claiming shot peening and you're claiming a particular alloy. That was on the material limitations, right? Those, the examiner said, I'm saying they're old. There was no disagreement from the applicant. He acknowledged they were old. What he said was, even though they're old, no one's thought of using them for my purpose as a replacement. And so he put replacement in not just as an expansion, but as a limitation. That's first. He amended. That's my first of the trifecta he did. Second, he defined what he meant by replacement. He said a replacement has to be something that can be made thicker than the original. And to do that and still have it fit, I have to use this new material. So he defined replacement. He didn't say replacement just in the sense of use. He defined replacement structurally and comparatively to the original by saying it's thicker than the original but still fits. Thirdly, he then relied on that distinction. So he's amended. He's defined what replacement meant. And then he distinguished by arguing to the examiner exactly what I just said, which was I am over the art. I am not covered by the art because in a replacement, though these materials were known, they were not known for use in a replacement. Here's what he said at 164 of the record. Where are we? A164, Your Honor, of the Joint Appendix. 164. Under non-obviousness of claim 10, there's A and B. And then the second sentence under A and B begins, The use of the material with the claimed ratio of fatigue over yield strength allows the wall of the cross tube to be made thicker. Thicker than what? Thicker than the original while maintaining the outer diameter the same as the cross tube being replaced and while maintaining the desired amount of energy absorption. The increased wall thickness reduces the operating stress. Hence, even though materials falling within the above ratio might have a lower allowable for fatigue stress, their lower yield strength allows a thicker cross tube, thus resulting in an improved fatigue life. All of which would be true if the material was being used to make a replacement part as well as if it was being used to make an original part. Well. The material behaves exactly the same. It does, Your Honor. But if I can also point for a moment to 165. Why wasn't the claim capable of being where the replacement being part being capable of being read as something that's capable of being a replacement? The structure, whether it's original on the helicopter or whether it's capable. Because that would essentially read that limitation out of. He would have expanded his claim instead of constricting it. What he said was, a replacement poses another problem, a different problem than original equipment. He said that. He says, the particular material claim might be well known. I'm reading from 165. And the use of built-in residual compressive strengths might also have been well known. However, combining either of these improvements in a replacement helicopter landing gear assembly with a strap having holes was not known, not obvious. Let me see if I understand what you're arguing here with respect to replacement. Suppose your helicopter makes a number of these parts. And let's suppose, just hypothetically, that it makes this part and then assembles the entire landing gear by implementing the part in the cross tube and so forth. And it also keeps a number of them on the shelf in case the parts wear out and the customers need them. Are you saying that the original equipment parts, identical in every respect to the replacement parts that are on the shelf, the original would not infringe, assuming all other limitations were met, but the replacement parts would? I say the replacement parts would not because they are not replacements as he defined them. Well, I'm going to say, for the purposes of this hypothetical, that structurally, those replacement parts have all the structural features that he's claiming. And so do the original parts. Yes, Your Honor. Right. Now, do the original parts avoid infringement because they are on the original helicopter? And do the replacement parts, are they caught by infringement because they are structurally identical? They should not be caught, Your Honor, because to get this claim allowed, remember, he asked for a claim with all those structural limitations in it. Okay. Now, I just want to make sure what you're answering. Right. You're saying neither would infringe? That's what I'm saying, Your Honor. And I'm saying it because of the special definition that this inventor gave the word replacement in order to convince the patent office to give him the patent. Right. But what's the special definition? I tried with my hypothetical to include all the structural features. Well. That are part of his definition of replacement in your replacement parts that are sitting on the shelf. You say you still don't infringe? That's correct, Your Honor. Okay. Why? Why? Because in order to get this patent allowed, this inventor said, look, the problem is forming something that's thicker than the original but still fits. And to do that, therefore, what my position for my client is, is we never do that. We have an original that's a thickness. Thicker is the characteristic of the gauge of the pipe. That's correct. So instead of a thick pipe, instead of a thin pipe. That's correct. You said in response to my question that we're not dealing with any form of replacement structure, only with original equipment. That doesn't quite match what I hear you saying now. Oh, I'm sorry, Your Honor. Then let me correct myself. It is true, as Judge Bryson has pointed out, it is true that although there's no evidence on the record, all these helicopters that my client makes have exactly the same landing gear. From the original design on. If they are ever reconstituted, to use a different word, those same original parts are put on the helicopter. Absolutely. Can we come back to the claimed tube? Yes, sir. So let's say that we agree that we know exactly what the limitations are about the tube, right? And so I have a plant in which I set out on purpose to manufacture exactly the claimed tube, and I do it. Now, I'm infringing if I'm making, using, or selling the claimed invention, right? Correct. So I'm going to try my best to make exactly what's claimed, and I do it. Have I infringed? I've made exactly what is claimed in the patent. If you've made exactly... I've made it. I've just made it. I just made it, and I'm so proud of it. And I had a press conference, and I said, I just made it. I just copied the patent. Even the patentee agrees I copied it. Did I infringe? No. Okay. I say what I have made is a replacement part for a helicopter that I knew was broken and needed a new landing gear. Right. Now have I infringed? Is it the same as the original part? If it's the same as the original part, my answer is no. No, it's not the same as the original part. The original part that broke was 10-gauge. Oh, it's 10-gauge. Oh, sure. Okay. That's because... Why did it break? It broke because it had 10-gauge, and I had to make the... Absolutely, Your Honor. And I changed my answer completely. If you make a thicker part, then you infringe. That's why it was claimed. Yes. So, Mr. Hardin, does your argument here depend on whether we agree with you that making is not infringement despite the statute? No. No, Your Honor. Well, that's what you told Judge Covington. My argument depends on holding the patentee to his bargain. He didn't have the word replacement in the claim at all. He put that word in. Does it have no meaning? Do you get to put a word in the claim and have no meaning at all? That's why somebody should have found out why there was a 112 rejection. But he argued in the 103, as I pointed out, for 103, he argued that the problem he was solving was to be able to use a tube that was thicker than the original. He compared himself, his invention, to the original by saying, I can make one that's thicker. He's perfectly capable of using the thicker tube if the tube, if its diameter is the same, it may have a bigger gauge. But he's trying to snap it into an existing bracket, right? The bracket only takes a certain size of pipe. Exactly. And my client has never done that. He's never put a thicker gauge into the bracket. Your client may well not meet the thickness requirement. You've said that right along. But we don't, that limitation is not in front of us. No. He never changed, he never, my contention is this. Having put the word replacement. Having never changed and he couldn't replace. So if replacement is the way the trial judge said it was correct, you win. And we all know that. That's easy. The question is whether or not what the trial judge said replacement is, is correct. Is it a use limitation? And the reason it is, again, because he defined it as being. Right. And don't you, I mean, pretty clearly and you read the district court opinions, he thought it was a use restriction. You had to use this thing as a replacement. Well. And it was argued to him that way below. Your brief runs away from the use limitation concept at breakneck speed. Well, not entirely, Your Honor. We do point out this. When. You say it can't be a use restriction because that would be incorrect. And you say it's a structural limitation. It's a structural limitation based on its use. Which was the same thing that happened in the drawer case. Angioplasty catheters. Angioplasty catheters. What does that mean? Angioplasty is a process. Replacement is a process. This court held, well, in this instance, we're going to turn what essentially is, would normally be an adjective or a verb, a process, into a structural limitation. And we're going to give it meaning. That's what I'm asking this court to do. Nothing more than that case did. Which is to say, when he uses the word replacement and says, I'm not talking about the original. I'm talking about something thicker and different than the original. In order to get his patent over the prior art. He's got to be stuck with it. Are you going to stand on your brief on the straps? I'd like to make a couple points with respect to the straps, John. First, this is not a case where several pieces are looked at to see if they can be made as one piece. It is true. Why not? Because this is a case where completely different parts were then labeled as a strap using the accused device as a template. We can't do that. You can always look at the accused device. But you can't use the accused device as a template to decide which pieces should be considered a strap. But that's exactly what's happening here. That is exactly what's happening here. What our client does is the same thing he's done since it's 359 patent, which was prior art, which is to use a rubber gasket with two metal stops on either side. And the rubber gasket causes the bracket not to contact stops directly. But more importantly than that, the words of the claim themselves require that the movement, that the stop is to be used for, that the movement is to be the bracket on the strap. It's not the movement of the bracket on the crossbar. The words of the claim say that the stop is the stop movement on the strap. And therefore, it has to be on top of the strap. And we say the gasket can't be viewed as a strap. The bracket has to be on top of the strap? Yes, Your Honor. Because the words of the claim require that movement of the bracket on the strap. The accused device has a bracket that goes down on top of the rubber grommet. So the bracket is on top of the grommet. So the question is, is the grommet part of the strap? If the grommet is part of the strap, then the bracket is on top of the grommet. Right? That would be correct, Your Honor. That would be correct. But the grommet is not the same material. That's what I mean. Your adversary understands that he has to succeed. He has to convince us that the two stops, okay, and the grommet together comprise a strap. Right. And he's saying there is case law that says that it's okay to have two pieces of structure meet a unitary structural limitation. And he's right about that. He is right about that, Your Honor. And so he said, why aren't I entitled to actual inquiry as to whether or not these things that are red and orange, and it shows us whether or not they together comprise a strap? Because the only way that anyone could see this thing and think it's a strap is by looking at the accused device. I've got an expert who put his word on the line. Right? A distinguished person in some field of mechanical arts put his reputation on the line and swore an affidavit saying he thinks these things function like a claimed strap. He did, Your Honor, but the – What are we to do with it? What you're to do with it, Your Honor, is – Summary judgment can't be rendered if there is a dispute as to material issue of fact. Your Honor, a strap, by definition here, had to stop movement of the bracket on the strap. The stops here on the sides, they're not – They're not – The bracket is – The stops are on the sides. They're not moving. They're not stopping movement of the bracket on the strap. Well, what do you make of the colloquy between your adversary and Judge Bryson about figures? What were they for and for not? You look at the claimed patent, right? And you look at Figure 5 in the patent, and that sure as heck begins to look like the 359. Figure – You take a – It's a 5. Figure 5. Figure 5, yeah. It's Figure 5. Yeah. Well, with all due respect, Your Honor, no, that – You see, the piece that's a strap there is the saddle-like piece. Right. It starts with the bracket 60, right? The phantom is the bracket 60. Correct. Correct. The strap is 28. Correct. And it's sitting on top of that. Right. And the stop is 30, and the edge of the stop is 34, which is impeding the movement of the bracket. Correct, Your Honor. Correct. Correct. And the only difference between that, it seems to me, and the accused device is that the bracket does not directly contact the stops, but rather it hits up against the rubber – the edge of the rubber piece in the accused device. Is that correct? That's correct, except, Your Honor, the specification makes it very clear that there's a difference between engagement and something that's not engaged. It uses the word engagement every time it talks about direct contact. And in these devices, direct contact, and if we're talking about stress and fatigue, direct contact is the name of the game for all of these. And this device, my client's device, which was in the art beforehand, which has a rubber gasket, is simply not – the type of device is not doing the function of stopping movement of a bracket on the strap. But it does stop the movement of the bracket, right? It just doesn't – it isn't – the stop itself doesn't contact the bracket. But there's the stop here, there's the gasket here, and there's the bracket here, and the bracket slams up against the gasket. That is correct. It doesn't slam up against the stop. But what if the gasket is a – you know, is a 32nd of an inch thick? Isn't that, at least for purposes of doctrinal equivalence, the same thing? It's slamming up against the stop? It is not, Your Honor. All right. I'm sorry. The gasket is not that thin. I understand. It is a functional gasket. It's not clear to me that that was fleshed out in the record. But in any event, wouldn't that be, at least for purposes of doctrinal equivalence, the same as direct contact between the bracket and the stop? I could see a DOE if that were the facts. Okay. All right. Thank you. Thank you, Your Honor. Mr. Robertson? Thank you, Your Honor. Before I first perhaps address – do you have any knowledge as to why there was a 112 rejection of all these claims? I do, Your Honor. I think it's at the appendix at page 165-66. And if I might just paraphrase, it says the first ground was involving a typographical error where the Article A was used instead of the DAW. And the second ground, the examiner says, and I'm quoting, was that he did not understand line 23 of Claim 1 and that it appears that the reference to the strap has been omitted. And I think both of those were corrected in response. He's looking at 148. Claims 1 to 9 are rejected under 112, second paragraph, indefinite for failure to particularly point out and distinctly claim the subject matter in which he regards the invention. Mr. A, we have a problem? I think maybe we can figure it out. I think that's where – And we'd be interested in your comments. I believe Judge Carpenter as well on the substance. Sure, certainly. Let me address the replacement issue if I could. And I'd like to go back to just basic first principles. And number one is the patent is entitled a helicopter landing gear assembly. It's not entitled a helicopter landing assembly to replace existing or original landing gear. The abstract, which this court has said is important to understanding the scope of the claims, states that it's an improved helicopter landing gear to substantially increase useful service life. That's the first sentence of the abstract. The last sentence of the abstract says it's the combination of these improvements that are described herein results in a substantially increased life of the landing gear assembly. Why didn't he add the word replacement to the claim? I don't think the record's clear on that, Your Honor. It certainly, I think – It wasn't necessary to get by Fagan. Certainly, I think that's clear. I mean, the structural limitations of Fagan that were cited by the examiner had to do with the fastener hole locations and the cross tube having improved fatigue strength. I won't read through it all, but that's what was addressed with respect to the Fagan reference, and that was – which was overcome. It was not to distinguish, for example, original landing gear in any sense. In fact, there's not in this record any landing gear patents that involved replacement landing gear. Certainly, this invention can be used on an original helicopter or it can be used to replace an existing landing gear. There's nothing – How do we know that? How do we know that the applicant didn't know something that wasn't in the record? When you have such a plain statement, which takes me back to my inquiry of your opponent, are there – I'll call them replacement parts, using it as a replacement. Is there an issue with respect to damages in terms of if we were to say that this excludes original equipment but extends to replacement, that there is an issue, or does it eliminate the issue of infringement? Well, as I said, Your Honor, discovery was not complete in the case, but I will speculate that the damages would be significantly limited if it was only – would only cover replacement landing gear for existing or original landing gear. But as I say, you can go through this entire specification and there's no one place where it says this invention is intended to replace existing landing gear and only existing landing gear. There's no express disclaimer or disavowal, as this court says. In fact, what it does say, in both the background of the invention and the summary of the invention, is that it is intended to – the general object of the invention is to provide an improved replacement landing gear to substantially increase useful service life. It uses the word replacement, but it doesn't say to replace. Replacement, in its ordinary meaning, Judge Bryson, I would submit, can mean to replace existing landing gear or, as it says in the patent, in the background of the invention, to replace the prior art landing gears. And in fact, in the prosecution history, and this is recited at the appendix at 629, it says the objective of the invention is to design landing gear assemblies with useful life approaching the life of the helicopter. Now, that is a strong suggestion that the landing gear was intended to be put on an original helicopter assembly because it's to approach the life of the helicopter, not to approach a partial life. And it also says, in the specification, that it would be beneficial to have landing gear that would have substantially longer life than the prior art landing gear assemblies. It's talking about the prior art landing gear assemblies. And I see I'm out of time unless... Well, we ran over with your appointment, so take a few more minutes to make any other points that we need. Sure. Well, thank you, Ron. Let me address the Roe v. Dorr case, which I actually think is helpful to us. This court construed the term angioplasty, which is a procedure to be a... not a use, but a structural limitation. But nevertheless, the sale of that device for a procedure alone constituted infringement, even if it wasn't used in that fashion. So it should not be a use limitation, as we've argued in our papers. But we think, even if it is a use limitation, it's not limiting, particularly in the context, we think, of a Jepson claim, which is designed to recite what is in the prior art and the landing gear. And typically, what is then the body of the claim is the structural limitations, defines, in fact, what the invention is. And we think, particularly in that context, it'd be inappropriate to have replacement be a limitation that nowhere in the specification is described as being limited to only retrofitting an already existing helicopter. I don't have any other points to make, unless the court has any questions. Any more questions, Mr. Roberts? Any more questions? The case is taken under submission. Thank you, both. Thank you, Roberts.